IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06-20020-002 |
| FREDARYL DAVIS, | ) ) ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Fredaryl Davis' Second Amended Motion for Compassionate Release (d/e 331) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On July 9, 2007, Defendant Fredaryl Davis pled guilty to Count 1 for conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On March 3, 2008, Defendant was sentenced to 324 months of imprisonment and a term of 10 years of

supervised release. On March 5, 2020, Defendant's sentence was reduced to 240 months of imprisonment. Defendant is currently serving his sentence at FCI Forrest City Low and has a projected release date of January 16, 2022.

On April 27, 2020, Defendant filed a pro se motion for compassionate release (d/e 304) pursuant to 18 U.S.C. § 3582(c)(1)(A) seeking compassionate release due to his health issues and the COVID-19 pandemic. See d/e 308. On May 11, 2020, the Court held a hearing on Defendant's first compassionate release motion, at which the Court was informed that Defendant tested positive for COVID-19. See Court's Opinion, d/e 319. On May 11, 2020, the Court denied Defendant's motion for compassionate release, finding that releasing Defendant into the community while he had COVID-19 was a danger to the safety of the community. Id. Additionally, the Court reasoned that Defendant's arguments were moot as he had tested positive, was asymptomatic besides losing his sense of smell and taste and was receiving healthcare at the facility. Id. The Court noted that Defendant was free to file a new compassionate release motion if circumstances changed.

On June 25, 2020, Defendant filed a second pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  See d/e 330.  On July 2, 2020, defense counsel filed an amended second motion for compassionate release.  See d/e 331.  Defendant argues that he remains at risk of serious illness or death from COVID-19 based on his current medical conditions and the threat of COVID-19 at his BOP facility, FCI Forrest City Low.  Id.   He contends that his circumstances changed as he is no longer testing positive for COVID-19, which means he is no longer a risk to the public, and the possibility that he may contract COVID-19 again.  Id.

On July 8, 2020, the Government filed a response objecting to Defendant's second motion for compassionate release.  The Government argues that Defendant's medical conditions remain the same, Defendant fails to follow medical advice to improve his conditions, and Defendant is not likely to contract COVID-19 again.

On July 20, 2020, the Court held a hearing on Defendant's second motion for compassionate release, at which time the Court heard arguments from counsel and a statement from Defendant.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Court concludes that § 3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the exhaustion requirements in all cases. The decision must be made on a case-by-case basis. In this case, the Defendant has failed to show that he has exhausted his administrative remedies or meet the 30-day requirement pursuant to 18 U.S.C. § 3582(c)(1)(A).

Defendant states that he filed a request for compassionate release with his facility on May 13, 2020 and May 27, 2020 and attached documentation of said requests. See d/e 330, pp. 6-7.

The Government did not address whether Defendant's facility received the requests. The Court finds credible Defendant's representation that he submitted the requests to the facility. Regardless, the Court excuses the requirement to exhaust Defendant's administrative remedies or meet the 30 days requirement pursuant to 18 U.S.C. § 3582(c)(1)(A).

The Court must consider whether "extraordinary and compelling reasons warrant such a reduction" and is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Social distancing can be difficult for individuals living or working in a prison.

FCI Forrest City Low has 28 inmate and 3 staff member active COVID-19 cases and 646 inmate and 3 staff member recovered cases. See COVID-19 Cases, Federal Bureau of Prisons,

https://www.bop.gov/coronavirus/ (last accessed July 20, 2020). In total, BOP has "4,096 federal inmates and 325 BOP staff members who have confirmed positive results for COVID-19 nationwide," and there have been 97 inmate and 1 staff member deaths as a result of COVID-19.  Id.

Defendant is a 44-year-old African American male.  His projected release date is January 16, 2022.  Defendant has been diagnosed with type 2 diabetes, hyperlipidemia, hypertension, and is considered clinically obese as he is 6' tall and 248 lbs. with a BMI of 33.6.  See Adult BMI Calculator, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last accessed July 20, 2020).  Defendant is at a higher risk of serious illness or death if he contracts COVID-19 again.  See People at Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 20, 2020) ("People of any age with the following conditions are at increased risk of severe illness from COVID-19:. . . Obesity (body mass index [BMI] of 30 or higher) . . . Type 2 diabetes mellitus."); Racial and Ethnic Minority Groups, CDC,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last accessed July 20, 2020) ("Some racial and ethnic minority groups are over-represented in jails, prisons, homeless shelters, and detention centers, where people live, work, eat, study, and recreate within congregate environments, which can make it difficult to slow the spread of COVID-19."). Individuals with hypertension also "might be at an increased risk." <u>See</u> People at Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 20, 2020).

Additionally, the Court finds that there is a chance that Defendant may contract COVID-19 again. Defendant argues that research shows that most patients who recover from COVID-19 have neutralizing antibodies, which indicates immunity for the affected individual. <u>See</u> Government's Response, d/e 332, p. 4. However, the CDC recognizes that it is possible for an individual who had COVID-19 to become infected again by the virus. As of July 20, 2020, the CDC provides the following advice:

Page **8** of **12**

> The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Patients infected with other betacoronaviruses (MERS-CoV, HCoV-OC43), the genus to which SARS-CoV-2 belongs, are unlikely to be re-infected shortly (e.g., 3 months or more) after they recover. However, more information is needed to know whether similar immune protection will be observed for patients with COVID-19.

See Transmission, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last accessed July 20, 2020); see also United States v. Heyward, Case No. 17-cr-527, d/e 83-1 (D.Md June 30, 2020). Therefore, the Court finds that extraordinary and compelling reasons exist that warrant a reduction in Defendant Davis' sentence.

The Court must also reconsider the factors set out in 18 U.S.C. § 3553(a). Defendant Davis is currently serving a 240-month term of imprisonment for conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base. Defendant has spent 162 months in custody – over 13 years – for his crime. While incarcerated, Defendant has participated in several educational and rehabilitation programs and is currently assigned to the HVAC educational program. See d/e 334. Defendant has not committed

any disciplinary infractions since 2017.  Id.  The Court has reconsidered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13.[1]  If Defendant quarantines himself at his new place of residence away from any other household members, that will diminish the risk of spreading the virus.  Otherwise, the Court does not find that Defendant poses a danger to the community.

The Court, taking all the relevant facts into account, finds that Defendant has established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Fredaryl Davis' Amended Second Motion for Compassionate Release (d/e 331) is

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisoners."  No policy statement provides guidance for when a defendant files a motion.  Nevertheless, the Court considers § 1B1.13.

GRANTED.  The Court DENIES as MOOT the pro se motion filed by Defendant Davis (d/e 330).  The Court hereby reduces Defendant's term of imprisonment from 240 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and for Defendant to arrange transportation.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend 6 months in home confinement, with the first 14 days to be spent in isolation.  The home confinement shall start as soon as possible after his term of supervised release begins.  Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation office is able to implement electronic monitoring.  All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to immediately test Defendant for COVID-19.  The Bureau of Prisons is also ORDERED to release Defendant once his release plan has been confirmed by the U.S. Probation Office and he has tested negative for COVID-19.  The Clerk is DIRECTED to send a copy of this Opinion to FCI Forrest City Low.  Defendant must self-quarantine for a period of 14

days beginning at the time of his release, including while he travels from his BOP facility to his new residence.  Defendant shall travel to his new residence in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  July 20, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE